IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED

DEC 3 2020

Clerk, U S District Court
District Of Montana
Billings

| UNITED STATES OF AMERICA, | CR 20-58-BLG-SPW |
|---|---|
| Plaintiff, | |
| vs. | ORDER RE MOTIONS TO SUPPRESS AND FRANKS HEARING |
| SIMON DOUGLAS STANLEY, | |
| Defendant. | |

Before the Court is Defendant Simon Douglas Stanley's ("Stanley") Motion for a *Franks* hearing (Doc. 13) and Motion to Suppress (Doc. 15), filed July 29, 2020. The United States filed a consolidated response to the motion on August 17, 2020 (Doc. 22) and Stanley filed a consolidated reply on August 19, 2020 (Doc. 23). A hearing addressing the issues was held before this Court on October 9, 2020. For the following reasons, the Court denies Stanley's Motion to Suppress and Motion to Suppress for *Franks* issues.

## I. RELEVANT BACKGROUND

On March 11, 2020, Agent Jory Bundy of the Montana Division of Criminal Investigations submitted an application for search warrant to Montana's Sixteenth Judicial District Court. The application stated that Agent Bundy had reason to

1

believe that Simon Stanley possessed dangerous drugs and drug paraphernalia in contravention to Montana Code Annotated § 45-9-102 and § 45-10-103, and that evidence of those crimes might be found at Stanley's residence.

Based on the information contained in the application, State District Court Judge Michael B. Hayworth issued a search warrant for Stanley's residence on March 11, 2020. The evidence seized from Stanley's residence resulted in the current charges of Count I: Conspiracy to Possess with Intent to Distribute Methamphetamine; Count II: Possession with Intent to Distribute Methamphetamine; Count III: Possession of a Firearm in Furtherance of a Drug Trafficking Crime; and Count IV: Prohibited Person in Possession of Firearms and Ammunition.

## II. DISCUSSION

Stanley makes two arguments for suppression of the evidence: 1) the search warrant application lacked sufficient probable cause to legally support a search warrant, and 2) the search warrant application contained material falsehoods or omissions in contravention of *Franks v. Delaware*, 438 U.S. 154 (1978).

### A. Lack of Probable Cause.

"A search warrant is supported by probable cause if the issuing judge finds that, 'given all the circumstances set forth in the affidavit before him . . . there is a

fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (alteration in original). A fair probability is met if the affidavit in support of the search warrant application describes a "probability or substantial chance of criminal activity." *United States v. Nguyen*, 673 F.3d 1259, 1264 (9th Cir. 2012) (quoting *New York v. P.J. Video, Inc.*, 475 U.S. 868, 877-78 (1986)). An actual showing of the crime is not required. *Id.* However, "[a] reviewing court should find that probable cause is not met when the issuing judge lacked a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Underwood*, 725 F.3d at 1081 (quoting *Gates*, 462 U.S. at 238-39) (alterations in original) (internal quotes omitted).

Stanley argues that the issuing judge lacked a substantial basis for concluding probable cause existed in the search warrant application because the information provided by the various confidential sources lacked corroborating evidence. He asserts that the police did not conduct a sufficient independent investigation of the tips received, the information was imprecise about where the methamphetamine could be found in Stanley's residence, and some information was over four months old at the time of the search which should make it stale and unusable.

3

The Government responds that more than sufficient probable cause existed for the issuing judge to approve a search warrant of Stanley's residence. This probable cause consisted of a confidential informant who provided first-hand observation information against their penal interests about witnessing an amount of methamphetamine in Stanley's possession at Stanley's house and purchasing methamphetamine through Stanley's girlfriend. A second confidential source also provided information about two individuals living in a trailer park that sold methamphetamine—information later confirmed by a search of the couple's vehicle—and the source believed Stanley stored methamphetamine for the couple. Finally, a concerned citizen provided first-hand observation information of increased traffic to Stanley's residence and information suggesting that, based on the concerned citizen's connection to Stanley, the citizen was aware of Stanley's drug use. The Government argues that this information, taken in its entirety, provided substantial grounds for concluding probable cause existed that Stanley was storing methamphetamine at his residence.

While the Court disagrees with the issuing magistrate that Agent Bundy's affidavit demonstrated a probability or substantial chance that criminal activity was taking place at Stanley's residence, the Court nevertheless must defer to the good faith of the law enforcement officers acting under the authority of the search

4

warrant and uphold the constitutionality of the search. *See United States v. Grant*, 682 F.3d 827, 832 (9th Cir. 2012).

### 1. Confidential Human Source (CHS).

Beginning with Agent Bundy's Confidential Human Source ("CHS"), the affidavit states that the CHS learned Simon Stanley was receiving methamphetamine from a source in Miles City and that Stanley was giving it to women he was dating. The CHS did not believe Stanley was selling methamphetamine. The CHS also told Agent Bundy that the CHS had personally witnessed Stanley with 3 ounces of methamphetamine in his house sometime in late October or early November of 2019. The CHS believed Stanley was using his residence as storage for larger quantities of methamphetamine for Stanley's supplier. However, the affidavit fails to provide the basis for the CHS's information and even the information about the 3 ounces of methamphetamine the CHS observed first-hand is simply too to remote in time to establish the needed probable cause.

"To determine whether an informant's tip is sufficient to support a finding of probable cause; a court must use a 'totality-of-the-circumstances approach' that takes into consideration the informant's 'veracity' or 'reliability' and his 'basis of knowledge.'" *United States v. Wall*, 277 Fed.Appx. 704, 704 (9th Cir. 2008)

5

(quoting *Gates*, 462 U.S. at 238). The Ninth Circuit judges the reliability of an informant based on several factors: "whether the informant is known or anonymous, whether the informant has a proven track record of reliability, the informant's basis of knowledge, and whether the informant 'provides detailed predictive information about future events that is corroborated by police observation.'" *Id.* (quoting *United States v. Rowland*, 464 F.3d 899, 907-08 (9th Cir. 2006)).

Here, Agent Bundy does state that he knows the CHS and the CHS has provided reliable information previously. However, other than the information about observing 3 ounces of methamphetamine, the affidavit fails to provide any details about the CHS's basis of knowledge for the information provided. The CHS believes that Stanley is not selling the methamphetamine, but the affidavit does not state the reason for this belief. The CHS also believes that Stanley's residence is being used as a storage facility for Stanley's Miles City supplier, but, again, the affidavit provides no basis of knowledge for this information.[1]

---

[1] The affidavit also contains information provided by the CHS about individuals named Katelynn Headdress-Schieffert and her mother, Ashley. The CHS states that Katelynn had been present in Stanley's residence to observe the 3 ounces of methamphetamine and that Katelynn acted as the middleman between the CHS and another supplier of methamphetamine in Miles City. The CHS believed that Ashley was in a dating relationship with Stanley and that both Katelynn and Ashley were users of methamphetamine. However, the CHS fails to provide any basis of knowledge for these beliefs.

6

Further, the CHS provided no information on future events capable of corroboration by law enforcement whatsoever. The only information that the CHS did provide about their own observations related to witnessing 3 ounces of methamphetamine in Stanley's residence approximately four months before Agent Bundy submitted the search warrant application. The Court finds this information stale and incapable of supporting a finding of probable cause.

"Staleness must be evaluated in light of the particular facts of the case and the nature of the criminal activity and property sought." *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991). "When evidence sought is of an ongoing criminal business of a necessarily long-term nature . . . rather than that of a completed act, greater lapses of time are permitted if the evidence in the affidavit shows the probable existence of the activity at an earlier time." *Id.*

The Government cites to *United States v. Pena-Torrecillas* for the argument that the CHS's observation of 3 ounces of methamphetamine was not stale information as evidence of drug trafficking offenses "may continue for 'several weeks, if not months, of the last reported instance of suspect activity.'" 658 Fed.Appx. 864, 865 (9th Cir. 2016) (quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986). However, the facts of *Pena-Torrecillas* are very different from the present case. In *Pena-Torrecillas*, the affidavit for warrant was

7

supported by a significant amount of information detailing an on-going drug trafficking operation including intercepted calls supposedly discussing drug quantity and quality, surveillance of suspected drug deliveries and transactions, and surveillance of bags and coolers being moved between vehicles and residences of the suspect. *Id.* The Ninth Circuit determined this information detailed "an active and ongoing investigation" all the way up to the month the wiretap application was submitted. *Id.*

Agent Bundy's affidavit, in comparison, contains very little evidence of an on-going drug crime continuing up to March 2020 when Agent Bundy applied for the search warrant. The affidavit describes the CHS's belief that Stanley was not selling methamphetamine but sharing it with women he dated and storing larger quantities of methamphetamine for a supplier in Miles City. To back up this information, the CHS reported seeing 3 ounces of methamphetamine in Stanley's residence several months before Agent Bundy compiled his search warrant application. The affidavit does not contain any information from the CHS regarding how long Stanley had allegedly used his residence as a storage location, whether the 3 ounces of methamphetamine the CHS witnessed in late October/early November 2019 was part of a larger stash of the supplier's, or any information regarding whether Stanley was still using his residence as a storage

8

location. Without more, this isolated incident of witnessing 3 ounces of methamphetamine in the possession of Stanley several months prior to the search does not describe an on-going drug trafficking operation of a necessarily long-term nature. The evidence is therefore stale and incapable of supporting a showing of probable cause.

### 2. Confidential Informant (CI).

Agent Bundy's affidavit also provides information from a Confidential Informant ("CI") whom another police officer interviewed in February 2020. The CI informed the officer that a couple, named Peggy and Lee, were supplying methamphetamine in Miles City and lived in the Alberts trailer court. The affidavit does not include how the CI knew this information nor does the affidavit contain any information on the identity or history of the CI other than that the CI had been previously arrested. Agent Bundy reported that he was aware of a couple matching the names of Peggy and Lee living in the Alberts trailer court and knew from previous investigation that the couple engaged in methamphetamine trafficking in the Miles City area.

The CI then stated that Peggy and Lee were storing the methamphetamine at the house of a Simon who worked at the local pawnshop. Again, the affidavit does not explain how the CI obtained this information. Instead, Agent Bundy stated that

9

he knew from personal knowledge that Stanley worked at First National Pawn in Miles City. The affidavit goes on to describe how Agent Bundy obtained a search warrant on February 28, 2020 for a vehicle owned by Peggy and Lee and discovered about an ounce of what appeared to be methamphetamine in the vehicle.

The CI's information here suffers from similar defects as the information provided by the CHS. Most noticeably absent from the affidavit is any information regarding the CI's basis of knowledge, particularly regarding the statement about Peggy and Lee storing methamphetamine at Stanley's residence. The personal knowledge of Agent Bundy and the results of the vehicle search appear to corroborate the CI's information about Peggy and Lee. However, there is no corroborating evidence presented regarding Stanley's role in the methamphetamine supply operation other than Agent Bundy's knowledge that Stanley worked at a pawnshop, an otherwise innocent detail which cannot serve as the sole support of an informant's tip. Thus, the CI's information is insufficient to support a finding of probable cause.

### 3. Concerned Citizen (CC).

Agent Bundy's affidavit states that on February 29, 2020, an Agent Pavlicek met with a Concerned Citizen ("CC"). The CC wished to remain anonymous but

reported his concern that Stanley was using drugs and that the CC had witnessed an increase in vehicle traffic to Stanley's residence in the last year. The affidavit stated the CC was very close to Stanley and had known him for years. However, the affidavit contained no information about why the CC believed Stanley was currently using drugs or how the CC knew traffic had increased to Stanley's residence.

Agent Pavlicek decided to investigate the increased traffic that same day and drove down the road leading to Stanley's house. Agent Pavlicek eventually turned around in Stanley's driveway and continued on the road away from Stanley's house. The affidavit describes a car passing Agent Pavlicek heading in the direction of Stanley's house. The affidavit explains that, based on Agent Bundy's personal knowledge, Stanley's residence is the only occupied residence on that road. Agent Pavlicek observed the driver of the vehicle and obtained the license plate number. Agent Pavlicek then waited in the area of Stanley's house for two hours until he observed the vehicle returning down the road and back into town. The affidavit describes the vehicle driving away from Stanley's house, but contains no information on whether Agent Pavlicek witnessed the driver get out of the vehicle or go into Stanley's house. Agent Pavlicek followed the driver to the

driver's residence and learned from dispatch that the driver had an extensive criminal history including previous convictions for dangerous drug possession.

Once again, the affidavit lacks the needed information for the CC's tip to support a finding of probable cause. There is no basis of knowledge provided for the CC's concerns or observations. The CC wished to remain anonymous, so their motives are not known as to why they chose to provide this information to law enforcement or if that information was provided against their penal interests. Agent Pavlicek did attempt to corroborate some of the information provided by the CC, yet the two-hour investigation yielded only an observation of a driver with past drug crime convictions drive towards Stanley's house and then in the direction away from Stanley's house. The affidavit does not describe Agent Pavlicek witnessing the driver interact with Stanley, exchange anything with Stanley, or even enter Stanley's residence. Agent Pavlicek did not conduct any other investigation to attempt to corroborate the CC's information regarding his observation of increased traffic to Stanley's residence. Thus, Agent Pavlicek's investigation corroborated purely innocent details which are not enough to support probable cause. *United States v. Mendonsa*, 989 F.2d 366, 369 (9th Cir. 1993) ("[M]ere confirmation of innocent details is insufficient to support an anonymous tip.").

Viewing the information presented in Agent Bundy's search warrant application as a whole, this Court finds that the statements of the three confidential sources are insufficient to warrant a finding of probable cause and the issuing judge erred in granting the search warrant. The affidavit is bereft of any basis of knowledge for the individuals' concerns and information. No source explains how they know Stanley is using methamphetamine or storing methamphetamine at his residence for a supplier. The only first-hand observation evidence presented to support the suspicion is a tip about witnessing 3 ounces of methamphetamine in Stanley's possession at his residence on a single occasion, several months before the search took place. As noted above, probable cause to search requires at least a "fair probability that contraband or evidence of a crime will be found in a particular place . . . ." based on the totality of circumstances presented. *United States v. Grant*, 682 F.3d 827, 832 (9th Cir. 2012) (quoting *Dawson v. City of Seattle*, 435 F.3d 1054, 1062 (9th Cir. 2006)). However, "[t]he most convincing proof that the property was in the possession of the person or upon the premises at some remote time in the past will not justify a present invasion of privacy." *Id.* (quoting *Durham v. United States*, 403 F.2d 190, 193 (9th Cir. 1968)). The Court sees no evidence presented in the search warrant application affidavit justifying a finding of probable cause and an invasion of Stanley's right to privacy. However,

13

the analysis does not end here as the Court must consider the good faith exception to the suppression rule. *See United States v. Elmore*, 917 F.3d 1068, 1076 (9th Cir. 2019) ("the question of '[w]hether the exclusionary sanction is appropriately imposed in a particular case' is an entirely separate issue 'from the question of whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'") (quoting *Leon*, 468 U.S. at 906).

### B. Good Faith Exception

"Suppression of evidence seized pursuant to a warrant unsupported by probable cause is not appropriate if the government relied on the warrant in 'good faith.'" *Grant*, 682 F.3d at 836 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). Several exceptions exist for this rule including when the issuing magistrate was misled by the affiant with false information, when the issuing magistrate wholly abandons their judicial role, when the warrant is so facially deficient to render any presumption of its validity unreasonable, or when a warrant was issued on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. The bar to reach this last exception is set necessarily high as law enforcement are not expected to question the determinations of the issuing judge. *Grant*, 682 F.3d at 836; *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). Yet, the exception

applies when the affidavit fails to reach "at least a colorable argument for probable cause . . . ." *Grant*, 682 F.3d at 836 (quoting *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006)).

Here, the Court cannot say that it was entirely unreasonable for law enforcement to rely on the search warrant for Stanley's residence. While the Court believes that the information contained in the search warrant affidavit fails in many respects to provide the proper corroborating evidence for information obtained from confidential sources, the warrant affidavit does provide at least a colorable argument for probable cause. The affidavit clearly describes information from multiple sources pointing to Stanley's residence as a likely location for the storage of methamphetamine. The situation is analogous to that described in *Elmore* where the Ninth Circuit determined that although the issuing magistrate erred in finding sufficient probable cause to search in the warrant affidavit, it was nonetheless reasonable for law enforcement to conclude that the suspect was involved in a crime and act on the information contained in the warrant. "To hold that the police could not have relied in good faith on the magistrate's determination here would be to '[p]enaliz[e] the officer for the magistrate's error, rather than his own,' and thus, 'cannot logically contribute to the deterrence of Fourth Amendment violations.'" *Elmore*, 917 F.3d at 1078 (quoting *Leon*, 468 U.S. at 921).

15

The Government points out that no evidence has been presented demonstrating that the issuing magistrate wholly abandoned his role in issuing search warrant. Stanley does not address the Government's argument that the good faith exception should apply in this case. Instead, the Defendant's argument for suppression pertains mainly to the supposed facial deficiency of the search warrant and Stanley's belief that Agent Bundy intentionally misled the magistrate with false statements or material omissions. As will be discussed below, the Court does not believe that Agent Bundy, at the time he submitted the search warrant application, made knowingly false statements in the application and no evidence has been presented demonstrating otherwise.

The argued facial deficiency in the search warrant also does not rise to the level required to make a law enforcement officer's presumption in the warrant's validity unreasonable. Stanley argues that because the search warrant incorrectly listed his residence as 1 Riverbend Estates instead of 22 River View Estates, the warrant was facially deficient to make an officer's reliance on the warrant unreasonable. However, Stanley does not disagree with the Government's argument that Stanley's residence is the only occupied residence in the area described by the search warrant. Further, the Government has provided evidence that prior law enforcement reports have listed the house number as 1. (Doc. 22-1 at

16

4). It was therefore reasonable for law enforcement officers to believe that the address listed in the search warrant pertained to Stanley's residence and, indeed, the intended residence was the one actually searched pursuant to the warrant. Exclusion is not required under these facts. See *United States v. Mann*, 389 F.3d 869, 876-77 (9th Cir. 2004).

### C. *Franks* Hearing

Affidavits in support of search warrants are afforded a presumption of validity. In order to challenge that validity, the United States Supreme Court in *Franks v. Delaware* required the following: (1) the challenger must present more than conclusory arguments for challenging the validity, accusations of negligence or innocent mistake are insufficient; (2) the challenger should point to the specific portions of the affidavit claimed to be false and submit a supporting statement of reasons for why the challenger believes those portions are invalid; and (3) the challenger must present an offer of proof in accompaniment of their allegations of falsehood or satisfactorily explain the absence of proof. 438 U.S. 154, 171-72 (1978). "[I]f these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.*

However, if the remaining information in the affidavit is not sufficient to support a finding a probable cause, the court may hold an evidentiary hearing on the matter. *Id.* The challenger need not present clear proof of intentional falsehood or omission to deserve a hearing on the matter, but the challenger must make a substantial showing of those elements. *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985). After the hearing, if the court determines that the issuing judge was misled by information the affiant "knew was false or would have known except for [their] reckless disregard of the truth, then suppression is an appropriate remedy." *Id.* A statement is made with reckless disregard for the truth when the affiant displays a "high degree of awareness of probable falsity." *United States v. Senchenko*, 133 F.3d 1153, 1158 (9th Cir. 1998). A defendant may also challenge the validity of a search warrant for deliberate or reckless omissions of facts. *Stanert*, 762 F.2d at 781.

Here, Stanley has submitted two affidavits from himself and his mother refuting certain information contained in the search warrant affidavit. Specifically, Stanley asserts that the CHS's information about witnessing 3 ounces of methamphetamine in Stanley's possession is untrue as is the information about Peggy and Lee. Stanley also states that he was not at his residence on February 29, 2020 when Agent Pavlicek observed William Charles Glenn driving towards

18

Stanley's residence and remaining for two hours. The affidavit from Stanley's mother, Mary Cecelia Stanley, also asserts that she was in the residence on February 29 but that no one came to the house. Mary Stanley's affidavit also contains exhibits of hand-drawn maps and Google Maps print outs depicting Stanley's residence and the surrounding area. These exhibits show a heightened embankment or dike separating Stanley's residence from the location of the CC's business making it difficult if not impossible for the CC to observe Stanley's residence from the business location and thereby observe increased traffic going specifically to Stanley's residence.

The Court also accepted evidence from Stanley during the suppression hearing including a transcript of an interview conducted between two DCI Agents and the CC several months after the search warrant application was submitted. During the interview, the DCI Agents learned that the CC did not actually know Stanley as a close friend and had not spoken to him since a Christmas party a year before the interview took place.

While this evidence does call into question the validity of some of the information included in the search warrant affidavit, Stanley has presented no evidence that the affiant, Agent Bundy, misled the issuing magistrate with any material information the Agent knew was false or should have known was false

when he submitted the search warrant application. Agent Bundy submitted his search warrant application on March 12, 2020, but the CC interview did not take place until July 2020. Thus, the information gained from the interview does nothing to clarify Agent Bundy's knowledge or intentions when including the information from the CC in the March 12, 2020 search warrant application.

Similarly, the affidavits from Stanley and his mother question the validity of the information from Agent Pavlicek's observations but do not demonstrate that Agent Bundy lied or intentionally misled the issuing magistrate when he included those observations in the affidavit. Therefore, because the affidavit does not contain intentionally or recklessly false statements, the Fourth Amendment does not require the Court to suppress the evidence obtained from the search pursuant to search warrant.

**IT IS HEREBY ORDERED** that Defendant Simon Stanley's Motion to Suppress (Doc. 15) is **DENIED**.

The Clerk of Court is directed to notify counsel of the making of this Order.

DATED this 3rd day of December, 2020.

_____
SUSAN P. WATTERS
United States District Judge